# CHICAGO AND ALTON RAILROAD COMPANY

## *v.*

## THOMAS HOGARTH.

1. NEGLIGENCE—*on the part of railroad companies—what constitutes—and herein of mutual negligence.* As a railroad train rounded a curve in the road in the City of Chicago, a heavily loaded wagon, with horses attached, was in plain view but a few hundred feet distant, stationary across the track. When the engine driver first saw the wagon he observed there was no one near it, and he must have remarked, from its appearance, it was a loaded wagon. He saw the wagon in time to have avoided a collision by stopping the train, but did not attempt to do so until it was too late, supposing the

wagon would be removed. The wagon, however, was stalled, and could not be removed in time to avoid a collision, and the train ran into it, injuring the wagon and horses attached to it. It was held, in an action against the railroad company to recover for the injury, to be culpable negligence on the part of the engine driver, in view of the possible disastrous consequences to life and property, to act upon the hypothesis that the wagon might, in some mode, be got out of his way, instead of using the certain means within his own control to prevent a collision.

2. Nor could it be said the driver of the team was guilty of an equal degree of negligence with that of the engineer, because he sought the means which an ordinarily prudent man would under like circumstances, to extricate his wagon, instead of going round the curve to attempt to stop by signals any train that might be approaching. The driver of the team, under such circumstances, was not chargeable with notice that a train was due when his wagon stalled.

3. The servants of the company were bound to use diligence and caution even before they became aware that the wagon was stalled. As soon as the wagon was discovered stationary upon the track, at a distance which would be passed over in about one minute, they should have used all the means in their power to prevent the imminent collision, whether they knew it to be stalled or not.

4. Although there may have been circumstances in the conduct of the plaintiff which constituted negligence on his part, yet if the defendant was chargeable with a far greater degree of negligence and thereby caused the injury, he would be liable.

5. Nor does it follow that because some act on the part of the plaintiff which constituted negligence, *contributed to the result*, it should discharge the defendant, if the negligence was slight in comparison with that of the defendant.

Appeal from the Circuit Court of Cook County; the Hon. Erastus S. Williams, Judge, presiding.

The case is sufficiently stated in the opinion of the Court.

Mr. A. W. Church, for the appellant.

Messrs. Miller and Lewis, for the appellee.

Mr. Justice Lawrence delivered the opinion of the Court:

This was an action on the case, brought by the appellee against the railway company, for injury to the horses and wagon of the former. He recovered a verdict for one thousand dollars, but the court below compelled him to remit two hundred dollars, or submit to a new trial. The company appealed.

The team of the appellee, drawing a wagon heavily loaded with tierces of bacon, was passing through an alley leading from a packing house, and crossing the railway, in the City of Chicago. The alley ran diagonally to the railroad, and at the crossing the wagon stalled, the near forward wheel having passed over both rails, the near hind wheel and off forward wheel over one rail, and the off hind wheel over neither. There were several teams just in advance, one of them belonging to the appellee, and the driver of the stalled team ran forward about the distance of a block for another pair of horses and whipple-trees, to aid in his extrication. He procured them, another teamster returning with him, and was about hitching them to his own team, when the approaching train was discovered. The driver commenced unhitching his horses, and P. Mara, one of the other teamsters who had come to his assistance, seized them by their heads, and, as he phrases it in his evidence, swung them free of the track. They were not, however, detached from the wagon, and when the latter was struck by the locomotive, were thrown against the train and badly injured. The train was approaching the city from the west, and the point of collision was 584 feet east of a curve in the track. It was only after rounding this curve that the wagon was visible to the engineer. The evidence, as is common in this class of cases, is quite contradictory as to the diligence of the engineer in seeking to avoid the collision. He swears that he did not see the wagon until about three hundred feet from it, on account of the curve and the steam from his locomotive, and on seeing it, not knowing it to be stalled, he whistled for it to be got out of the way, then ran about fifty feet further, whistled down the brakes, and reversed

the engine. He did not reverse the engine until he saw a man signaling him. This man was, he says, about fifteen feet from the crossing, and he, himself, was a little over two hundred feet. On the other hand there are several witnesses who testify that when the train was discovered, three or four of the persons who had gathered about the wagon, started up the track, making signals, and one of them went nearly to the curve. To these signals the engineer paid no attention. The engineer himself, testifies that he could have stopped his train in running two hundred and sixty feet, and if he had known when he first saw the wagon that it was stalled, he could have stopped the train before reaching it. But even after striking the wagon the train did not stop until the third or fourth car was abreast of the wagon. The engine therefore could not have been reversed before it had reached a point about one hundred feet west from the place of collision.

Taking the case, then, on the testimony of the engineer alone, we are not inclined to reverse this judgment on the ground urged, among others, that the verdict was unsupported by the evidence. The circumstance occurred in a crowded city, where the commonest prudence would dictate much more than ordinary care on the part of the persons having the train in charge, in order to avoid collisions. As they round a curve a heavily laden wagon is in plain view but a few hundred feet distant, stationary across the track. It was in broad day light, about 9 o'clock in the morning, in the middle of March. The engineer swears, that when he first saw the wagon he saw no person near it. Yet he could not well avoid remarking that it was a loaded wagon, as there were on it fifteen tierces of bacon. Seeing then this loaded vehicle standing on the track, with no person near it, and it being in his power, as he says, to stop his train, was it not most culpable negligence in him, in view of the possible disastrous consequences to life and property, to act upon the hypothesis that the wagon might, in some mode, be got out of his way, instead of using the certain means, within his own control, to prevent a collision? It is

precisely by this species of criminal recklessness on the part of engine drivers, that so many human lives have been sacrificed upon American railways.

It is urged, however, by the counsel for the appellant, that the negligence on the part of the driver of the team was as great as that of the engineer, and that this should bar the appellee's recovery. The driver, however, was not chargeable with notice that a train was due when his wagon stalled, and his conduct, therefore, was what that of any ordinarily prudent person would have been under like circumstances. He hastened for assistance to his fellow teamsters, engaged in hauling from the same packing house. It was probably while he was thus absent that the engineer caught his first view of the wagon, when he swears no person was near it. Several of them returned to aid him with an additional team, but the train had already rounded the curve. As soon as it was discovered, several persons started up the track to signal it, but in vain. A few moments more would have sufficed to have attached the additional team and extricated the wagon. In view of the fact that the driver had no knowledge that a train was at hand or due, it was perfectly natural for him to seek, in the first instance, to extricate his wagon, instead of going round the curve to attempt to stop, by signals, any train that might be approaching. Besides, having no knowledge of the movement of the trains, he would not have known from which side to anticipate danger, or in which direction to go and signal.

It is urged, however, that the court erred in refusing the first, third, seventh and eighth instructions asked by the defendants, and in modifying the second, fourth and fifth. Those refused were as follows:

1st. The plaintiff's right to recover in this case depends upon two concurring facts:

*1st.* The defendant must be chargeable with some degree of negligence.

2*d.* The plaintiff must have been entirely free from any degree of negligence which contributed to the injury, that is, of any negligence without which the injury would not have happened.

3d. If the jury believe, from the evidence, that the plaintiff's wagon was fast upon the railroad track, so that his horses were unable to move it therefrom, and that he knowing this fact, and that the defendant's train was approaching, took no pains to notify defendant's servants that his wagon was fast until it was too late to avoid collision, then he was guilty of negligence which contributed to produce the injury and can not recover therefor.

7th. If the jury believe, from the evidence, that the plaintiff had so overloaded his wagon as to render it impossible for his horses to draw it across the railroad track, and that but for this the accident would not have occurred, then this is such negligence on his part as will prevent a recovery for the damage done by the collision.

8th. If the jury believe, from the evidence, that the plaintiff failed to use his utmost efforts to extricate his wagon from its dangerous position upon defendant's railroad track, and that he gave no notice by signal or otherwise to those in charge of the approaching train of his inability to move his wagon until it was too late to avoid collision, and that but for this failure to give notice to the defendant's servants the accident might have been avoided, then he was guilty of negligence which contributed directly to the production of the injury, and can not recover damages.

The counsel for the appellant urges, in reference to the first instruction, that although this court has often decided that a slight degree of negligence, on the part of the plaintiff, will not bar a recovery, if the negligence of the defendant, in comparison, was gross, yet the court has never decided that the plaintiff can recover when guilty of negligence that contributed to the injury. In the phrase "negligence that contributed to the injury," the counsel has adopted the formula of the early

English cases upon this subject, but it is an expression which may often be truthfully applied where the negligence has been of the slightest possible character. Such is the intimate relation between events in the sequence of human affairs that in many cases it may strictly be said of any act of the injured party, performed prior to the injury, and in connection with it, that it *contributed* to produce it, and we are by no means prepared to say that, even when the act which has thus contributed to the result is negligence, it shall discharge the defendant, if the negligence is slight in comparison with that of the defendant. For example, it is more prudent to remain in a sitting posture in a railway carriage. Yet if a passenger, weary with hours of travel, leaves his seat and moves up and down the car, and while thus moving is thrown by a collision violently to the floor and injured, while all other persons seated in the same car remain unhurt, it may be truthfully said that the fact that the passenger was standing, undoubtedly contributed to the injury, and to have been thus standing was undoubtedly a very slight degree of negligence, inasmuch as it added to the possible perils of railway travel, and was not absolutely necessary. Yet would any court, in our day, hold that this passenger would have no recourse against the company if the collision had been caused by gross carelessness on the part of the persons having the train in charge ? On the contrary the courts would say that the passenger had a right to presume, and to act upon the presumption that the train would be managed with at least ordinary care, and hence to make such change of his position as might add to his comfort, provided he did not thereby add to those risks against which ordinary care on the part of the officers of the company would not protect him. We observe that several of the courts of this country, besides the Supreme Court of this State, have modified the early English rule in regard to the proof of negligence on the part of the plaintiff in actions of this character, and this modification necessarily results from the changed condition of affairs to which these rules are now

applied. When we consider the irresistible power of a railway train, the speed with which it moves, the fact that it is certain to crush whatever stands in its way, and the number of human lives dependent upon the care with which it is managed, we should be wanting in our duties to the public if we did not so apply the rules of law as to give the greatest possible security to the persons and property which constantly depend upon such care for their safety. While we fully recognize our obligation to protect these corporations against the injustice which the ill-will of juries may sometimes commit, we should not forget, on the other hand that they have been clothed by the Legislature with special privileges, that they wield vast wealth, that they, and they only, can control the conduct of their employees, and that almost the whole community, in its nearest and dearest interests, is dependent upon their management. That this management should be marked by great care and prudence is not requiring too much.

The 3d, 7th and 8th instructions were properly refused, because they tell the jury that if the plaintiff had failed in his duty in certain particulars, they were to find for the defendant, without reference to the question as to whether the defendant had been guilty of a gross degree of negligence which caused the accident. Although the circumstances, hypothetically put in these different instructions, would have been negligence, yet if the defendant had been chargeable with a far greater degree of negligence and thereby caused the injury, he would, under the former decisions of this court, have been liable.

The modifications of the 2d and 5th instructions were proper, for the same reasons that the instructions just referred to were properly refused. The modifications simply brought the instructions into accordance with the decisions of this court, as to gross negligence, and we do not agree with the counsel for the appellant that there was nothing in the evidence to which the modifications could apply.

The 4th instruction, to the modification of which the appellant objects, was as follows:

25—38th Ill.

4th. If the jury believe, from the evidence, that the defendant's servants were running its train according to law, and that as soon as they became aware that the plaintiff was unable to remove his wagon from the track they took the proper precautions to prevent collision, and that notwithstanding this precaution the collision occurred which injured the plaintiff's wagon, then the defendants were guilty of no negligence which entitled the plaintiff to recover damages of the defendants.

This was modified by inserting after the words " collision occurred " the words " without any fault on the part of the defendants."

The instruction as drawn was obviously improper as it assumed that the defendant's servants were not bound to diligence and caution, until after they became aware that the wagon was stalled. As soon as the wagon was discovered stationary upon the track, at a distance which would be passed over in about one minute, they should have used all the means in their power to prevent the imminent collision, whether they knew it to be stalled or not. The instruction, as modified, simply told the jury that if the collision occurred without any fault on the part of the defendant, the plaintiff could not recover. This was a simple truism, and equally true whether the plaintiff was guilty of much or little negligence, or none at all. In the modifications of the 2d and 5th instructions the jury were told that if the plaintiff was guilty of any, even slight negligence, the defendant would not be responsible unless guilty of negligence which would be gross as compared with that of the plaintiff. The fourth instruction, therefore, as given, could not have misled the jury, and was true as a legal proposition.

The instruction, as to the measure of damages, was given by the court, as asked by the appellant's counsel, and the verdict, after the entry of the remittitur, although rather large, can not be said to be unsupported by the testimony.

*Judgment affirmed.*