### TRACEY v. TOWNSHIP OF SOUTH HAVEN.

1. DEFECTIVE HIGHWAYS—NEGLIGENCE—QUESTION FOR JURY.
   Evidence that for the whole spring, and until May 1st, the time of plaintiff's injury, a washout existed in the highway, and that for a period of two years previous, when it had been raining, washouts occurred at or near the same place, warranted the inference that the township had knowledge of the condition of the highway, and justified the submission of the question of its negligence to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   One driving a horse accustomed to shy at objects in the highway, and paying no attention to the road, but admiring the scenery, is guilty of contributory negligence in driving along a narrow and high embankment into a washout in plain view.

Error to Van Buren; Carr, J. Submitted January 14, 1903. (Docket No. 36.) Decided March 23, 1903.

Case by Addie M. Tracey against the township of South Haven for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Wicksall & Cogshall* (*Dallas Boudeman*, of counsel), for appellant.

*Thomas J. Cavanaugh*, for appellee.

CARPENTER, J. The action in this case is brought to recover damages on account of injuries received by the plaintiff while she was driving over a public highway in the township of South Haven. Plaintiff's testimony tended to show the following facts : She is a woman 45 years of age, and by her injuries was permanently disabled. On the morning of May 1, 1899, she, with her husband, started from their home to the place of Mr. Voorheis, where Mr. Tracey was at work as a carpenter. They were the owners of a horse which had been driven by the family for many years single, and was used as a family horse. On the morning in question the plaintiff's husband harnessed the horse to the buggy. It was a gentle horse, and had been used a great deal by the plaintiff and her husband and their daughters. Plaintiff and her husband were driving together, and, when they arrived at the place where he was at work, he got out, and she drove on alone in a westerly direction, which leads to the village of South Haven. In doing so she was obliged to pass over the highway where she was injured. This highway extended east and west through the center of sections 1 and 2 in South Haven township, and where the injury occurred said highway crosses a ravine about 15 rods in width. Said ravine extends north and south, and is crossed by the highway in an easterly and westerly direction. The roadbed crossing said ravine is from 15 to 18 feet high, and from 8 to 12 feet wide at the top. There is a large hill on each side of the ravine, which slopes at an angle of about 45 degrees towards the ravine. On the sides of the roadbed where it crosses the ravine there were originally barriers, but in that part of the highway lying directly outside the village limits these barriers were permitted to decay, rot, and fall over. There existed in this roadbed, where it crosses said ravine, a washout from one to two and a half feet deep, and about two feet in diameter. This washout could be seen four or five rods away by those approaching it from either direction. It had been there during the whole spring, and it continued to grow worse

from time to time.    In fact, the evidence tended to show that for at least two years previous to the time of the accident, when it had been raining in the fall and spring, washouts occurred at or about the place where the plaintiff was injured.    While the plaintiff was driving over, upon, and along this roadbed where it crosses the ravine, driving her horse at a walk, her horse became frightened at the washout, and stepped to one side.    In doing so the bank of the road gave way, and, in endeavoring to regain his foothold, the horse, buggy, and all rolled down the embankment, and the plaintiff received the injuries complained of.    Plaintiff recovered before a jury, and defendant appeals.

The defendant insisted on the trial, and insists here, that a verdict should have been directed in its favor, because plaintiff was guilty of contributory negligence, and because the evidence failed to show any such neglect on the part of the township as would render it liable. We are all agreed that the evidence warranted the inference that the washout had existed so long that the township officers must have known of it before the plaintiff's injury, and therefore that the question of defendant's negligence was properly submitted to the jury, under the authority of *Thomas* v. *City of Flint*, 123 Mich. 10 (81 N. W. 936, 47 L. R. A. 499).

The serious question in the case, however, is whether or not plaintiff's own testimony warranted the finding that her negligence did not contribute to her injury.    The determination of this question requires a careful examination of that testimony.    On direct examination plaintiff testified:

"As I was driving along, admiring the ravine very much, suddenly the horse first kind of shied, stepped one side, and at the same time I noticed the wheel was on the verge of going into this rut.    *    *    *    My wheel was far out as I discovered it    *    *    *    as the horse shied; and at the same time I discovered that the wheel was on the outside in the washout, and just ready to drop down. *    *    *    At the same time the horse shied I saw the

whole thing, and yanked on the lines suddenly. At the time he shied he stepped one side, stepped outside of the track, and it caved off, and, when he stepped back to save himself from going down the bank, the buggy got the upper hand of me, and he went down the bank. * * * We were so far to this side that he nearly, I think, stepped in the hole himself. I didn't notice him, because he was so gentle that it was very seldom that I had to pay any attention to him."

That the horse was the family horse, and had been driven by plaintiff and her daughters for years.

On cross-examination plaintiff stated that she was driving along, admiring the ravine, its depth, its green groves, and the blossoms on the trees.

"The morning was a very fine one, not cloudy. * * * The first thing I knew about the washout, the horse shied. * * * At this time I was right at the edge of it. * * * When the horse shied, I pulled on the lines. Up to the time that he shied, the lines were loose to a certain extent. We always drive him with a loose line; not overly loose, but yet not with a tight rein. The lines were not lying on the dashboard at the time."

She also testified that the horse had shied at ruts or bad places in the road prior to this.

"I don't know as the horse ever came so near stepping into a hole that I didn't notice before I got to it, and I was looking out for it; but as it happened this morning, I didn't see that one. * * * I didn't happen to be looking down at the road directly. I didn't think of such a thing."

That she was looking at the blossoms, and consequently did not notice the hole; that the horse had often shied at paper; that he had shied at a road machine, at ladies dressed in white, at cars or engines, at logs half covered with snow, at domestic animals in the track, at a gentleman carrying a harness. When he shied "he was easy to manage, though. If not reined up, he would shy off half the width of the road, probably."

The law in this State is well settled that, to entitle plaintiff to recover, the burden rests upon her not only to estab-

lish defendant's negligence, but to prove that she herself was not guilty of contributory negligence. *Drew* v. *Steamboat Chesapeake*, 2 Doug. 33; *Lake Shore, etc., R. Co.* v. *Miller*, 25 Mich. 274. The circumstances, as detailed by plaintiff,—this narrow, high embankment, the horse accustomed to shy,—clearly imposed upon her some degree of care. Her testimony does not warrant the inference that she exercised any care whatever, either in watching the horse or observing the highway. While it is generally a question for the jury, and not for the court, as to what care should be exercised, this court is bound to say that no care is not due or reasonable care. *Lake Shore, etc., R. Co.* v. *Miller*, 25 Mich., at page 294. This is not like the cases of *Dundas* v. *City of Lansing*, 75 Mich. 499 (42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457); *Lowell* v. *Township of Watertown*, 58 Mich. 568 (25 N. W. 517); *Graves* v. *City of Battle Creek*, 95 Mich. 266 (54 N. W. 757, 19 L. R. A. 641, 35 Am. St. Rep. 561); *Sias* v. *Village of Reed City*, 103 Mich. 312 (61 N. W. 502); *Grattan* v. *Village of Williamston*, 116 Mich., at page 465 (74 N. W. 668); and *Vergin* v. *City of Saginaw*, 125 Mich. 499 (84 N. W. 1075),— where the injured party introduced testimony tending to excuse him for receiving an injury from a known defect in a highway. In this case the defect was not known to plaintiff, but it was open to her observation, had she paid any heed to her surroundings. It is urged that this court should not declare a rule which requires the driver of a vehicle to keep his eye constantly on the roadbed in front of his horse, or which will prevent his enjoying, to some extent, the beauty of the surrounding scenery. This opinion declares no such rule. It simply recognizes that, under the circumstances of this case, plaintiff was under an obligation to use some care. Her testimony fails to show that she used it, and presents no excuse for such failure.

Judgment is reversed, and a new trial granted.

The other Justices concurred.