HENRY C. WALKER *et al.*

*v.*

THEODORE COLLIER *et al.*

1. EMPANNELING A JURY—*how many shall be called at a time.* There is no law requiring four jurors to be called at a time to be sworn. A less or a greater number may be called at any one time, and the parties be required to pass upon them.

2. WITNESS—*competency—in what mode his interest may be shown.* A witness who is objected to, because of an interest in the event of the suit, may be examined on his *voir dire,* or his interest may be shown by witnesses, but resort cannot be had to both modes.

3. SAME—*release to restore competency, though fraudulent, is good for that purpose.* If the release executed to render a witness competent be fraudulent, it is, nevertheless, valid and binding between the parties to it, and when it is produced, a witness cannot be examined to show it is fraudulent.

4. INSTRUCTIONS—*where one of a series is objectionable.* It is sufficient, if a series of instructions properly present the law of the case, though one of the series, when disconnected, might be objectionable.

5. SALES OF PERSONAL PROPERTY—*when made to different persons who has title.* If there be too valid sales of personal property to different persons, he who first lawfully, and without committing a trespass or tort, obtains the possession, has the better title.

WRIT OF ERROR to the Circuit Court of Marshall county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action of replevin brought in the Circuit Court of Marshall county, by Theodore Collier and Elijah M. Holloway, against Henry C. Walker and William Walker, for a quantity of cord-wood.

The principal witness in the cause was one Sloover, who had cut and corded the wood, who testified he had never sold and delivered it to any one else but the plaintiffs. That he had sold and delivered it to them on the 28th of March, 1864. . There was about forty-one cords, and was piled up near Henry C. Walker's house—had not measured it until he sold and delivered it to the plaintiffs.

*Andrew McDonald* testified for defendants that he was at work for Henry C. Walker in December, 1863, and that about that time Sloover came to Walker's house with the first load of wood in controversy—had not then delivered any. Sloover drove up to the last gate, and told witness to come and shovel away the snow for Walker's wood; witness shovelled the snow away for three cords; Sloover piled the wood where the snow was shovelled away; there was one cord of Walker's own wood there before Sloover commenced hauling; at another time, Sloover threw down a lot of wood and told witness to come and pile up Walker's wood; witness, with Walker's team, hauled some of the wood and piled it up, and while hauling with Sloover, he told witness he was hauling the wood to Walker on a contract to haul him one hundred cords in payment for his team.

Another witness (*Mosier*) stated that Sloover had bought two teams of Walker, and a wagon, harness and threshing machine; the first team, wagon, etc., was bought in the fall of 1863; the other team of colts in the winter of that year; Sloover told this witness, when hauling the wood in question, he was to give Walker twenty-five cords of wood on the old team at three dollars and fifty cents per cord, and he was

then hauling it; some time after, when Sloover was hauling the wood in controversy, he further told this witness, he was to give Walker one hundred cords at four dollars per cord, to be delivered by the 15th June, 1864, and Walker was to hire, or pay for cutting it, and he said, if the weather kept good, he would soon have Walker's wood hauled; about six weeks after Sloover had bought the team, and when all the wood that was replevied had been hauled, witness heard a contract between him and Walker, which it was agreed, at the wood pile, when Sloover was unloading the wood, that Walker should buy back the first team at $220, and that the twenty-five cords which had been delivered by Sloover, on first contract, in payment of that team, should go towards paying for the last team, and Walker was to allow him the same for that twenty-five cords as was agreed upon as to the one hundred cords; talked about the wood; Walker said part of it was walnut, and he would not receive it; Sloover said when the one hundred cords was hauled he would measure it all together, and if it did not suit Walker, and they could not agree upon it, they would leave it to neighbors; heard Sloover say while hauling wood that he was hauling wood to Walker on a contract to deliver one hundred cords; none was hauled after the last agreement; the objection to the walnut wood was previous to the agreement under which Walker took back one of the teams. Witness, on cross-examination, stated that soon after the last agreement, Walker took the team and colts back on a chattel mortgage.

*Sloover,* on being recalled, stated that the wood in question was delivered to Walker on a contract to deliver him one hundred cords in payment of a team; the whole amount was to be hauled and measured before it was delivered. No part of it had ever been measured and delivered. Some time in February, 1863, he sold back to Walker one of the teams for $220, and the twenty-five cords for that team was to go as a part of the one hundred cords which he was to pay for the colts. The twenty-five cords contained the walnut wood

which Walker refused to receive. No part of the wood was to be delivered until it was all hauled and measured, and then, he told Walker, if he was not satisfied with the wood, he need not take it, or he would leave it to the neighbors. On his cross-examination, he stated, at the time Walker bought back the team, he gave witness up a lot of notes, and he supposed the note for twenty-five cords is among them. This is the substance of all the evidence.

The defendants asked the following instructions, which the court refused, and the defendants excepted:

That if the wood in controversy was by Sloover mixed wilfully with Walker's wood and confused the same, then the wood would all belong to Walker, and Sloover could not sell it.

That the fact, if proved, that Walker took the team mentioned from Sloover on a mortgage, has nothing to do with the merits of this case, and should not be considered by them.

That no actual measurement of personal property sold is necessary to pass the title. It is enough if the goods are identified and the control of the same given to vendee.

That if the jury believe, from the evidence, that twenty-five cords of the wood had been delivered to Walker on the first contract, no subsequent contract would revest the title in the wood in Sloover, without a delivery with all the forms necessary in any ordinary sale.

When the seller has performed everything that is required of him as to a certain portion of the thing sold, but something still remains to be done as to the rest, the portion in regard to which the seller has performed all his duty becomes the property of the purchaser, but the portion in respect to which something material is yet to be done still belongs to the seller.

Defendants also asked the following instruction:

If the jury believe, from the evidence, that Sloover, unconditionally, delivered to Walker the wood in controversy, upon a contract therefor between them, such wood at once became the property of Walker, whether it had been measured or not.

The court refused to give this, as asked, but added thereto as follows :

Unless the contract of sale required the wood to be measured, or some other material act to be done, before the wood should become the property of Walker.

And then gave it as modified, to which defendants excepted.

The court also instructed the jury, on the part of defendants below, as follows :

1. If the jury believe, from the evidence, that Sloover bought a young team of Walker on the 18th of December, 1863, and as part payment agreed to deliver twenty-five cords of wood within thirty days thereafter, and that Sloover did deliver the twenty-five cords of wood, and that said twenty-five cords is part of the wood in controversy, he, Sloover, thereby lost all control and ownership over said wood, and as to said wood the jury must find for defendant.

2. That if the jury believe, from the evidence, that Sloover, in January, 1864, bought of Walker another team for which he was to give one hundred cords of wood, to be delivered by the 15th of May or June following, and that Sloover did deliver any portion of said wood upon said contract to said Walker, all of said wood so delivered at once became the property of Walker, and as to all such wood, the jury should find for defendants.

3. If the jury believe, from the evidence, that Sloover, unconditionally, delivered to said Walker said wood in controversy on a contract between them, such wood at once became the property of Walker, whether measured or not,

unless the contract required the wood to be measured, or some other material act to be done, before it became the property of Walker.

3. If the jury believe, from the evidence, that Sloover delivered to Walker the wood in question, upon a contract for the same, then the property therein would pass to Walker, and could not be taken from him, by Walker taking the team from Sloover on a chattel mortgage given to Walker, and as to such wood delivered the jury should find for defendants.

8. When the article sold is bulky, as wood in the cord, then a constructive delivery is sufficient.

10. If there be two valid sales of wood in controversy, he who first lawfully, and without committing a trespass or tort, obtains the possession, has the better title.

13. The jury may, if the evidence warrants it, find a part of the wood in plaintiff and a part in defendant, in which case they should specify what part was owned by each.

The jury having returned a verdict for plaintiffs, defendants moved to set the same aside, and for a new trial, for the following reasons:

1. For permitting Sloover to testify, and refusing to permit defendants to examine him as to his interest.

2. Court gave improper instructions for plaintiffs, and refused and improperly modified defendants'.

3. Verdict as to a portion of the wood was manifestly without any evidence to support it.

4. Verdict against the evidence.

This motion being overruled, and exception taken, the defendants then entered a motion in arrest of judgment, which was also overruled.

The cause is brought here by writ of error, and the following errors assigned:

1.  In empanneling jury as was done.

2.  In permitting Sloover to testify, and in refusing to permit examination touching delivery of release, and touching other interest he might have in the suit.

3.  In giving defendants in error's instructions.

4.  In refusing and improperly modifying plaintiffs' instructions.

5.  Judgment was for defendants in error when it should have been for plaintiffs in error.

Messrs. BANGS & SHAW for the plaintiffs in error.

Messrs. BURNS & CUMMINS for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the court:

This was an action of replevin in the Marshall Circuit Court, and a trial and verdict for the defendants.

The first objection made is, that when the jury was about to be empanneled, four jurors having been chosen and sworn, two more were called and accepted by the plaintiffs and tendered to the defendants to pass upon. To this they objected, and insisted upon a panel of four being tendered. The court thereupon called two additional jurors, and required the defendants to pass upon the four, to which they objected until the two last called should be chosen by the plaintiffs, but the court required the defendants to challenge or accept the four, whereupon the defendants challenged peremptorily one, and accepted the other three, and excepted.

We are not aware of any statute requiring four, or any other number of jurors, to be called at any one time, to be sworn on a jury. It is the practice to call four, and to call upon the plaintiff in the first instance to pass upon them, but there is no requirement of law on the subject. The only statute we have, is chapter 58, title "Jurors," by the eighth section of which, the clerk of the Circuit Court, at the commencement of each term, is required to write the name of

each petit juror on a separate ticket, and put the whole into a box, or other place for safe keeping; and as often as it shall be necessary to empannel a jury, he, or the sheriff or coroner must, in the presence of the court, draw by chance, twelve names out of such box or other place, which shall designate the twelve to be sworn on the jury, and in the same manner for the second jury in their turn, as the court may from time to time order and direct. Scates' Comp., 680. From this, it would seem, the whole number is to be drawn at one time, and sworn, but the practice usually has been, to call four at a time, but there is nothing in the law to prevent a less or greater number being called, and the parties required to pass upon them. There is nothing in this objection.

As to the other point, it is complained by the plaintiffs in error, that 'they had a right 'to examine Sloover as to his interest, and the execution of the release to him, after a witness had been examined touching that interest. The general rule on this subject, as laid down in *Diversey* v. *Will,* 28 Ill., 216, is, that a witness who is objected to, because of interest in the event of the suit, may be examined on his *voir dire,* or his interest may be shown by witnesses, but resort cannot be had to both modes. A case is cited by the plaintiffs in error, from 5 Conn., 258, *Stebbins* v. *Sackett,* where it was held, that though the above be the rule, yet a resort to one mode to prove the interest of the witness on one ground, does not preclude recourse to the other to prove his interest on a distinct ground. Admitting the force of this decision, we do not discover its bearing on this case, as no other ground than a general interest of the witness, Sloover, was suggested on the trial. It is now said here, that plaintiff in error had a right to examine Sloover, after having examined Mosier, as to the delivery of the release, that it might be merely fraudulent, and also to examine him as to other interest he might have in the suit not covered by the release. We see no force in this, for if the release was fraudulent, it was valid and binding between the parties to it, and no special interest in.

24

the suit which Sloover might have had, was specified, which was not covered by the release. The court below was not informed of any such interest, nor is this court.

As to the instructions, taken as a series, they are correct, and fairly present the law of the case. Those refused were .fully supplied by those given, and plaintiffs in error have no reason to complain that the law of their case was not fully presented. *Elam* v. *Badger*, 23 Ill., 498 ; *Schwartz* v. *Schwartz*, 26 Ib., 81 ; *Warren* v. *Dixon*, 27 Ib., 115.

The evidence sustains the verdict, and the judgment must be affirmed.

*Judgment affirmed.*