51    333
140   284
40a   591
51    333
62a   551

# THE CHICAGO & ALTON RAILROAD COMPANY

## *v.*

## JOSEPH PONDROM.

1. NEGLIGENCE—*compared.* Where a person traveling on a railroad car permits his arm to rest on the base of the window, and slightly project outside, and thereby has his arm broken in passing a freight train, the negligence of such person is slight, compared with the negligence of the company

334        CHICAGO & ALTON R. R. CO. *v.* PONDROM. [Sept. T.,

Syllabus.    Opinion of the Court.

in permitting its freight cars to stand so near the track of its passenger train; and a recovery may be had for the injury sustained.

2. SAME—*gross.* It is gross negligence, on the part of a railway company, to permit cars or other heavy or permanent bodies to stand so near its tracks, that its trains, in passing over them, must pass within a few inches of such bodies.

3. SAME—*plaintiff's negligence slight—defendants' gross.* The rule must be considered as firmly established in this State, that in such cases, where the degree of negligence on the part of the plaintiff is slight, as compared with that of the defendant, he can recover.

4. NEW TRIAL—*excessive damages.* A verdict will not be disturbed on the ground of excessive damages, unless it is apparent that the jury acted under prejudice, passion or mistake; even though this court may consider the amount of damages large.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The opinion states the case.

Mr. A. W. CHURCH and Mr. JOHN N. JEWETT, for the appellants.

Mr. E. W. EVANS and Messrs. COOPER & PACKARD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellee was a passenger on appellants' road on the afternoon of the 17th of September, 1867, from Bloomington to Chicago. He had purchased a ticket for a first class car, and left Bloomington at noon and arrived at Chicago at 9 o'clock of the evening of the same day. On approaching Twelfth street, it appears that the train stopped as usual, and appellee swears he saw a long freight train on the right hand side of the car in which he was sitting. He seems to have been by a window on that side. He seems to have remained in his seat and had his arm resting on the window

sill, while the window was open, and he swears that as the train was approaching Twelfth street, his right arm was seized by some sharp pointed instrument and was drawn out of the window, and forced back against the rear window frame and was broken just above the elbow joint.

Another witness swears that he was at the time looking at appellee, and that his arm was resting on the window sill and his hand hanging down on the inside of the car. Neither witness saw what it was that came in contact with appellee's arm. An inspection of the sleeve of the coat worn by appellee at the time, submitted to us by agreement of counsel for our examination, shows, that on the under side of the sleeve, near the lower end, the cloth was considerably broken and torn. The theory of appellee's counsel is, that some iron instrument, protruding from the rear end of the freight train, entered the car window and came in contact with appellee's arm near the wrist, and pulled or forced it backward until it was fractured above the elbow, the face or side of the window forming the fulcrum. Appellants' counsel contend that his arm was outside of the window and came in contact with some stationary body, by which it was forced backward against the window frame and thus broken.

We are unable to conceive how an instrument could be contrived or formed, attached to the corner of a freight car, that could pass into a window and seize a man's arm near the wrist, hanging down several inches below the base of the window, and not only so, but seize it on the under side of the arm, and hold it firmly and force the arm back, as this seems to have been done. If not impossible, we suppose it to be extremely improbable. We can find no solution to the occurrence in that mode, yet this seems to have been the theory of both appellee and the other passenger. If an iron instrument of sufficient length to enter the car far enough to accomplish this purpose, had protruded from the rear end of a freight car standing near the track when this train passed, it certainly would have came in violent contact with the front part of the

coach in which appellee was riding, and the friction would certainly have been so violent as to have attracted the attention of all persons in the car. Again, the wrist, when the force was applied, from the description of its situation given by appellee and the passenger, must have been at least four or five inches in from the outer surface of the car, and it may be asked, how it could have passed the forward part of the train and this car without being broken off or bent so that it would not have passed so far into the car window as to produce the results that it is insisted were thus accomplished.

Nor do we see that it is in the least probable that such an instrument could have been thrust into the window by the backing of the freight train. It is true, that if a spike or bar of iron had protruded backward from the rear of a freight car, and it had been backing at the time, it is not impossible that the iron rod could have entered the window, but is impossible that it could, after entering the window some four inches above the wrist, have instantly, by its own gravity, curved downward so as to come in contact with the under side of the wrist; and the same may be said if the freight car was stationary. We are, for these reasons, satisfied that the injury was not inflicted in that mode, although appellee and the other passenger no doubt honestly believed that it was. Neither of them saw the instrument that produced the injury, as it was sudden, unexpected and startling; they were most probably not observant of all the surroundings and their relations to each other. Not having expected the occurrence, perhaps neither of them was noticing the actual position of appellee's arm at the time of the contact.

While at most, we may, with the facts we have before us, be able to do no more than arrive at a reasonable conclusion, still it appears to us that the most natural and probable theory is, that appellee had his elbow resting on the window sill, with his arm extending outward and upward, and in passing the rear end of the freight train, it was so near the passenger car that his wrist came in contact with the corner of the rear car;

and if the speed was sufficiently rapid, the force would be so great that the arm would not be readily withdrawn, and as the pressure increased it would not only force the arm back until it was broken, but it would render the slipping of the arm so difficult, that as it dragged past, it would most likely produce rents in the sleeve, at the place and of the shape found to have been made in the coat sleeve. This, we think, was the manner in which the injury most probably occurred. This, to us, seems reasonable and satisfactory.

The question then arises, whether, having the arm casually outside of the car in that manner, was negligence, and if so, was there greater negligence in the company in permitting its freight cars to stand so near the track as to produce the injury in the manner we suppose it occurred; and if both parties were guilty of negligence, was that of appellee relatively slight when compared with that of appellant? For a passenger to allow his arm to rest on the window sill and slightly project beyond the outside surface of the car, may be, in some degree, negligence, but observation teaches that to do so is not uncommon with passengers. It is frequently done through inadvertence, and when done intentionally, it is upon the supposition that all railway companies have their track free from obstructions, and that they permit nothing to remain so near to the track as would render it dangerous to permit the hand to pass a few inches beyond the outside of a car window.

We have been referred to a number of cases in other courts, and the earlier cases decided in this court, as announcing the rule, that where there is contributory negligence, the plaintiff cannot recover. The established doctrine of this court is, that where the negligence of the plaintiff is slight as compared with that of the defendant, a recovery may nevertheless be had. We are fully aware this is apparently opposed to the decisions of some courts, but it is more apparent than real, as recoveries are permitted in those courts where acts of the plaintiff should be regarded as slightly negligent, not

22—51ST ILL.

equal to ordinary care; and by requiring the greatest possible precaution on the part of the carrier.

In the case of *Spencer* v. *The Milwaukee & Prairie Du Chien R. R. Co.* 17 Wis. 487, a case very similar in all of its material facts to the case at bar, the court say :

" When we consider the manner in which railroad cars are usually constructed—with windows so that they can be opened, and arranged at a sufficient height from the seat so that passengers will almost unconsciously place their arms upon the sill for support—there being no bars or slats before the window to prevent their doing so—then to say that if a passenger's arm extends the slightest degree beyond the outside surface, he is wanting in proper care and attention, and if an injury happens he cannot recover, because his conduct must have necessarily contributed to the result, appears to us to be laying down a very arbitrary and unreasonable rule of law."

" It is probably the habit of every person, while riding in the cars, to rest the arm upon the base of the window.   If the window is open, it is liable to extend slightly outside.   This we suppose is common habit."

" There is always more or less space between the outside of the car and any structure erected by the side of the track, and must necessarily be so, to accommodate the motion of the car."

" Passengers know this, and regulate their conduct accordingly; they do not suppose that the agents and managers of the road suffer obstacles to be so placed as to barely miss the car while passing.   And it seems to us almost absurd to hold that in every case, and under all circumstances, if the party injured had his arm the smallest fraction of an inch beyond the outside surface, he was wanting in ordinary care and prudence."

In the case of *Laing* v. *Colder et al.* 8 Penn. State R. 479, it was held, that a person traveling on a railroad car, who permitted

his hand to extend outside of the window, and thereby had his arm broken in passing a bridge, could not recover if the agents of the company had given timely notice of the danger which the plaintiff might have avoided. It will be observed, that this case turns upon the fact that notice had been given to the passenger not to put his hand outside of the window. Had the notice not been given, we may infer, the court would have held the company liable.

In the case of *The New Jersey Railway Co.* v. *Kinard*, 9 Harris, 203, the same court say, that "A carrier of either goods or passengers is bound to provide a carriage or vehicle, perfect in all its parts; in default of which he becomes liable for any loss or injury that may be suffered, provided, it happen without negligence or misconduct on the part of the party injured. A carrier of passengers is bound to omit no precaution that may conduce to their safety. He is bound to guard against every apparent danger that may beset them. The dangers incident to traveling in railway cars are few in comparison with those incident to other modes of travel; but the most prominent of them is risk of injury to limbs stuck out of windows, where the cars are not so constructed as to prevent it. Any one who has traveled by railway, must have observed that even the most careful passengers forget the risk, and unconsciously suffer their elbows to slip out beyond the window sill. What can a carrier do to prevent it? No more is required than a few metalic rods set in the windows perpendicularly or horizontally, or a netting of wire work, or even wooden slats. None of these would materially impede the circulation of the air, or abridge the comfort of the passengers, while it would make their safety sure. A car without any of these appliances, is, to coin a phrase, not road-worthy, and a carrier is responsible for any loss that may happen from that cause alone. Risking his passengers in an unsafe car, it behooves him to use every means in his power to guard against danger from it at dangerous places, by audibly proclaiming in the car the necessity of keeping arms and heads inside. Should

any one disregard such warning, he would incur the charge of willful neglect of his own safety, and where there is negligence on both sides, neither party is answerable for any injury from it."

We are aware that this last case has been overruled by the case of *The Pittsburg & Connelsville Railroad Co.* v. *McClurg,* (Law Register for March, 1868). But we think the former case the better considered of the two, and to be based on sounder reasons and more in harmony with the analogies of the law, and entitled to more weight.

But even if it were to be conceded that it was negligence on the part of appellee to have had his arm outside of the car window, should he be precluded from a recovery? Was it negligence on the part of the railway company to permit cars or other heavy or permanent bodies to stand so near their track, that cars in motion must pass within a few inches of such bodies? We suppose it to be a clear and undeniable duty of a railway company to keep its track clear of such obstructions; and a failure to do so, is gross negligence. With such objects so nearly in contact with cars running at a high rate of speed, life must necessarily be greatly endangered; and when such negligence as appellee may have been guilty of, is compared with the negligence of permitting a freight train to stand so near the track of a passenger train as to produce the injury which did occur, the former is slight and the latter is gross. And it has long been the settled law of this court, in such cases, to compare the negligence of both parties, and even if the plaintiff is guilty of negligence which is slight, as compared with that of the defendant, he may recover. *Galena & Chicago Union R. R. Co.* v. *Jacobs,* 20 Ill. 478; *Chicago & Rock Island R. R. Co.* v. *Still,* 19 Ill. 499; *St. Louis & Alton R. R. Co.* v. *Todd,* 36 Ill. 409; *Chicago & Alton R. R. Co.* v. *Hogarth,* 38 Ill. 370. These cases, besides a large number of others in our court, announce the rule, and notwithstanding other courts have adopted and acted upon a different rule, we regard it as firmly established in this State.

But even under the contrary rule there are authorities of weight which would justify us in holding that the protrusion of appellee's hand through the car window was not negligence, and that permitting the freight cars to stand so near the track for the passenger cars was gross negligence. In the case of *Spencer* v. *The Milwaukee & Prairie Du Chien R. R. Co.* 17 Wis. 493, it was held, where a passenger, while the train was passing over a bridge, had his hand outside of the car window, and it came in contact with a brace in the bridge, which had become loosened and dropped downward, and the hand was injured, there was not negligence on the part of the plaintiff, while there was on the part of the company.

An examination of the instructions given in this case, shows that the rules announced and applied by this court in reference to negligence, were fairly stated to the jury, and could not have misled them; and the evidence sustains the verdict.

The verdict found and returned by the jury was, no doubt, excessive, but the court below required appellee to remit all but $2,500, or he would grant a new trial. This appellee did, and the court rendered judgment for that sum. While the verdict, after the *remittitur* was entered, was still large, we are not prepared to say that it is so far excessive as to require the judgment to be reversed. It is not so large as to strike us that it could only be the result of passion, prejudice or mistake.

The judgment of the court below is affirmed.

*Judgment affirmed.*