# THE STERLING BRIDGE COMPANY

## *v.*

## WILLIAM N. PEARL.

| 80 | 251 |
|---|---|
| 121 | 449 |
| 25a | 71 |

| 80 | 251 |
|---|---|
| 163 | 24 |

| 80 | 251 |
|---|---|
| 69a | 279 |

| 80 | 251 |
|---|---|
| e93a | [2]207 |

| 80 | 251 |
|---|---|
| 106a | [1]271 |

| 80 | 251 |
|---|---|
| e113a | [2]283 |

1. PRACTICE—*effect of ordering a jury to try the issues, upon pending motions for rule to give security for costs, and for leave to prosecute as a poor person.* Where the record shows a motion by defendant for a rule on plaintiff to give security for costs, and, three days afterwards, a motion by plaintiff for leave to prosecute as a poor person, and no formal disposition of either motion, an order of the court, after the last motion, for a jury to be impanelled to try the issues is, in effect, an allowance of the last motion and a denial of the first.

2. SAME—*impanelling jury.* Neither party can be required to examine jurors touching their qualification, unless there are twelve jurors in the box. It is not sufficient that there are twelve jurors called into the box in the first instance. If the plaintiff, on examination of the jurors, reduce the number in the box, by challenge, to less than twelve, the defendant is entitled to have the number of twelve in the box before he examines them.

3. The plaintiff is not, however, required to pass upon the entire panel of twelve before the defendant is called upon to pass upon any of them, but each panel of four must be accepted by both parties before calling up another; but there must be, when either party requires it, during all the time the jury is being impanelled, twelve jurymen in the box; hence, when one is challenged, before proceeding further another must be called into the box; and then from those in the box another must be added to the panel of four being passed upon. When the panel of four is accepted by both parties, they become a part of the jury, and a panel of four more is called up and the same process repeated.

4. EVIDENCE—*improper to permit parties to testify to opinions.* Where one of the questions in a case was, whether the plaintiff, in a suit against a bridge company for damages occasioned by its negligence, had been guilty of contributory negligence in driving upon the bridge with a top-heavy load during a high wind, it was *held* to be erroneous to permit the plaintiff to testify as to what he thought about the danger of doing what he did, and that he should have simply stated the facts, and left it to the jury to draw the conclusion from the facts, whether, as a man of ordinary prudence and caution, he ought to have known it was dangerous to attempt to do as he did.

5. NEGLIGENCE—*contributory and comparative.* Where it appears that the plaintiff's negligence is comparatively slight, and that of the defendant gross, the plaintiff will not be deprived of his action; but even if the negligence of the defendant is gross, yet if the negligence of the plaintiff is not slight, as compared with each other, the plaintiff can not recover, and it is

error to instruct the jury that a plaintiff, who has been guilty of negligence which has contributed to the injury complained of, is entitled to recover unless his negligence contributed to a considerable degree to the such injury.

APPEAL from the Circuit Court of Whiteside county; the Hon. W. W. HEATON, Judge, presiding.

Mr. JOHN V. EUSTACE, for the appellant.

Mr. C. L. SHELDON, and Mr. D. McCARTNEY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee brought case against appellant for injuries received by him in consequence of the defective condition of one of the approaches to its bridge over Rock river, at Sterling. The jury rendered a verdict for appellee for $6000, upon appellee remitting $1500 of which, the court gave judgment for the remainder, $4500. Numerous errors have been assigned on the record, but, in our opinion, it will be necessary to notice but such as hereinafter indicated.

Appellant moved for a rule on appellee for security for costs. Three days afterwards, appellee made a motion for leave to prosecute as a poor person, supported by his affidavit. The record fails to show any formal entry disposing of either motion, but it does show, after the last motion was made, the court ordered a jury to be impanelled to try the issues. This, we think, was, in effect, the allowance of the last motion, and, consequently, a denial of the first. It was discretionary with the court to allow appellee, upon being satisfied that he was a poor person, to prosecute the suit as such. (R. L. 1874, p. 298, sec. 5.) We are unable to say, from anything before us, that discretion has been so abused as to justify our interference.

Before the parties were required to pass on the jury, twelve jurors were called and placed in the jury box, and these were called up, four at a time; and appellant objects that it was required to exercise its right of peremptory challenge as to each four, as called, before the vacancies in the panel of twelve called

into the box, caused by challenges for cause, had been filled, and before twelve jurors had been accepted by appellee.

The provision of the statute supposed to have been disregarded by this practice, is as follows:

" Upon the impanelling of any jury in any civil cause now pending, or to be hereafter commenced in any court in this State, it shall be the duty of the court, upon the request of either party to the suit, or upon its own motion, to order its full number of twelve jurors into the jury box, before either party shall be required to examine any of the said jurors touching their qualifications to try any such causes: *Provided*, that the jury shall be passed upon and accepted in panels of four by the parties, commencing with the plaintiff." (R. L. 1874, pp. 634–5, sec. 21.)

To give full effect to all the words of this section, it is essential that the court shall order twelve jurors into the jury box *before either party* shall be required to examine any of the jurors touching their qualifications to try the cause for which they are to be impanelled. It is plain, from the use of the words *either party*, that it is not designed simply that there shall be twelve jurors called into the jury box in the first instance, but that *neither party* shall be required to examine them touching their qualifications, unless there are twelve jurors in the box. If the plaintiff, on examination of the jurors, reduces the number in the box, by challenges, to less than twelve, the defendant, being included within the words "either party," is entitled to have the number of twelve in the box before he examines them.

Had it been the design of the General Assembly simply that twelve jurors should, before any examination as to their competency is had, be ordered into the jury box, we must presume they would have so said; and we can not suppose, when it is said " either party," it is only the plaintiff who is intended.

The case of *Walker et al.* v. *Collier et al.* 37 Ill. 362, cited by counsel for appellee, is not in point. The section quoted was first adopted by the legislature in 1869, while that case was decided at the April term, 1865, under a statute in which

there was no such requirement.   The objection, in our opinion, is well taken, and it was error to compel appellant to exercise his peremptory challenges until the panel of twelve was filled. We do not, however, construe the section as requiring that the plaintiff shall exercise his peremptory challenges to the entire panel of twelve before the defendant can be called upon to exercise his right of challenge.   By providing that the jury shall be passed upon in panels of four, commencing with the plaintiff, it would seem clear that each panel must be accepted by both parties, before calling up another, and that the plaintiff could not be expected to make challenges in panels in advance of their being called.   There must, when either party requires it, during all the time the jury is being impanelled, be twelve jurymen in the box.   Hence, when one is challenged, either for cause or peremptorily, before proceeding further, another must be called into the box; and then, from those in the box, another must be added to the panel of four being passed on.   When the panel of four is accepted by both parties, they become a part of the jury, and a panel of four more is called up, and the same process is repeated.

Appellant has a bridge extending from the shore of Rock river, on the side on which Sterling is situated, to an island in the river, opposite, and another bridge extending from this island to the opposite shore of the river at or near the village of Rock Falls.   Between the two bridges, on the island, an embankment is thrown up for a roadway which is connected with the bridges by approaches consisting of trusses resting on piers of stone, supporting floors of heavy oak planks.   That connecting the bridge from Sterling with the island, is about 80 feet in length, and is lower at the end next the island than where it connects with the bridge, and is 22 feet in width from outside to outside, and 18 feet in the clear.   It is protected by a railing about 30 inches in height.

On the afternoon of the 18th of February, 1873, as appellee was on this approach, with a large load of rye straw, on which he was riding, and which he was attempting to convey to a paper mill at Rock Falls, his wagon upset, and he fell beyond

the approach to the ice below, a distance of 20 or 25 feet, break-ing the thigh bone in one leg, and otherwise seriously injuring him; and it is to recover compensation for such injuries that the present action is brought.

Appellee introduced evidence tending to show that, where the approach connects with the bridge, the floor of the former is lower by some two or three inches than the latter, causing a jog; that some of the timbers supporting the floor of the ap-proach had become misplaced by rotting, and the loosening of stay-bolts, etc., and that, in consequence, a heavily loaded wagon passing from the bridge to the approach, and especially when near the center of the latter, would cause a very great swaying motion, up and down, and thereby tending to upset loads that were top-heavy.

On the contrary, appellant introduced evidence tending to show that where the approach connects with the bridge, the floors were level, and that the jog spoken of by appellee's wit-nesses is several feet back on the bridge, and is caused by lay-ing, across the bridge, a floor of pine on top of a floor of oak, and the terminating of the pine floor that distance back on the bridge; that the timbers were sound, and the approach in good condition; that there was but a very slight, if any, swaying motion caused by heavy vehicles passing over the approach; and that appellee's wagon was upset by a high wind prevailing at the time, and which was so great as to make the effort to then cross, with the load he had, an act of recklessness.

A question was also in issue between the parties, whether the railing on the sides of the approach was of sufficient height.

While appellee was testifying, this question was propounded to him: "If the railing at that time had been the same that it now is, would you not have considered it safe to have hung on to the lines?" The question was objected to by appellant, because it is leading, and because it calls for an opinion merely. The court overruled the objection; and appellee answered: "I should have considered it safe to hold on to the lines if the present railing was there."

The question was obnoxious to both objections, and the answer should not have been received as evidence, although it is not of sufficient importance to justify a reversal, of itself, alone. The leading feature is too obvious to justify comment. The witness being the party, and testifying in his own behalf, needed no suggestion or prompting to elicit all he knew in favor of the side calling him.

Whether appellant was negligent in constructing and maintaining the approach, and whether appellee was negligent, as well as the relative degrees of their respective negligence, was to be determined by the jury from the facts proved, in which the answer given, in our opinion, could furnish no legitimate aid. What appellee thinks, now, he would have done, in the contingency mentioned in the question, does not tend to prove due care on his part, or negligence on that of appellant.

When appellee was examined, in rebutting evidence introduced by appellant, he was asked, and permitted to answer over appellant's objection, if the wind, at the time he received the injury, was such as to lead him to think there might be danger. This was erroneous. He should have stated the facts, not what he thought, and allowed the jury to draw the conclusion from the facts whether, as a man of ordinary prudence and caution, he ought to have known it was dangerous to attempt to cross the bridge, and its approach, at that time.

Among other things, the court instructed the jury as follows:

" The court, in this case, instructs the jury it is and was the duty of the Sterling Bridge Company, at the time of the accident referred to in the evidence in this case, to have and keep their bridge and its approaches in good repair and safe condition for the purpose for which they were built and ordinarily used; that in the performance of that duty, they were legally bound to use ordinary care; that ordinary care means such care as ordinarily prudent men use in regard to their own affairs of the same importance and risks of danger; that, if the plaintiff was injured, in this case, by reason of the defendant's fail-

ure to perform such duty in the manner required, then, if the plaintiff used ordinary care on his part, he has a right to recover; but if the plaintiff's injury was not caused by the failure of the defendant to do its duty, or the plaintiff, by his own neglect of ordinary prudence and care, contributed, to a considerable degree, to the injury, then he can not recover."

The only statement that we have been able to discover, in any of the instructions given, of the degree of contributory negligence which will preclude appellee from recovering, is that found in the last clause of the foregoing instruction, that if "the plaintiff, by his own neglect of ordinary prudence and care, contributed, to a considerable degree, to the injury, then he can not recover." The question under the evidence was important, and for a misdirection in this respect, if for no other, the judgment should be reversed.

We are aware of no authority which holds that, where the plaintiff, as well as the defendant, is negligent, the plaintiff can recover, unless his negligence contributed to "a *considerable degree*" to the injury complained of. Certainly such is not, and has not been recognized as the law in this State since the *Jacobs' case*, 20 Ill. 478, where, after an exhaustive review of the authorities, the conclusion was thus stated: "We say, then, that in this, as in all like cases, the degrees of negligence must be measured and considered, and whenever it shall appear that the plaintiff's negligence is comparatively slight, and that of the defendant gross, he shall not be deprived of his action." This has been repeated time and again, with but slight variation in form, and its corollary—where the negligence of the plaintiff is not slight, and that of the defendant gross, in comparison with each other, the plaintiff can not recover—has been recognized in the following, among other, cases: *Chicago and Alton Railroad Co.* v. *Pondrom*, 51 Ill. 333; *Chicago, Burlington & Quincy Railroad Co.* v. *Dunn*, 52 id. 452; *Illinois Central Railroad Co.* v. *Baches, Admx.* 55 id. 379; *Illinois Central Railroad Co.* v. *Maffit*, 67 id. 431.

It may be, in the general argument of the case, the expres-

sion may be found, in opinions, that the plaintiff will not be precluded from recovering for injuries received by reason of the defendant's negligence, although negligent himself, unless his negligence contributed, in a considerable degree, to the injury; but this, on examination, it is believed, will be found to be used by way of argument or illustration only, and not for the purpose of giving an accurate definition of the rule.

If the plaintiff has failed to exercise due and ordinary care and caution, and thereby contributed to bring on himself the injury of which he complains, unless the negligence of the defendant has been gross, in comparison with his conduct, he can not recover.

The judgment is reversed and the cause remanded.

*Judgment reversed.*