## John Mayers and Harry H. Miller
### v.
### Maria Smith.

*.Dram Shop Act—Action by Wife under Sec. 9—Evidence—Preponderance—Instruction—Means of Support—Damages—Whether Excessive or Exemplary—Impaneling Jury—Peremptory Challenges.*

1. Under Sec. 21, Chap. 78, R. S., when, in impaneling a jury, a panel of four has been accepted by both parties, they become a part of the jury and can not thereafter be challenged peremptorily.

2. In an action brought by plaintiff under Sec. 9 of the Dram Shop Act, to recover damages for the death of her husband, alleged to have resulted from intoxication, produced by intoxicating liquors procured from defendants, it is *held:* That the evidence sustains the verdict for the plaintiff; that the statute imposes liability when the intoxication is caused in whole or in part by the liquor furnished by the defendant; that the plaintiff was properly permitted to show the extent to which she was dependent upon the deceased for her means of support; that the damages are not so excessive as to justify interference by this court; that under the evidence and instructions it will be presumed that only actual damages were allowed.

[Opinion filed February 17, 1887.]

In error to the Circuit Court of McLean County; the Hon. O. T. Reeves, Judge, presiding.

Messrs. J. W. Fifer and T. C. Kerrick, for plaintiffs in error.

In impaneling the jury, plaintiff and defendants accepted two panels of four, and in doing so defendants used but one peremptory challenge. While passing upon the third panel, and before it was accepted by defendants, and before any of the jury were sworn, and while defendants still had two unused peremptory challenges, defendants offered to challenge peremptorily jurors Owen and Carpenter, who were in the panels previously accepted but not sworn. The court refused to permit the challenges, or either of them, and defendants made no further peremptory challenges. We contend that a party has a right, after the acceptance of a juror and before he is sworn, to challenge such juror peremptorily, and such

right is not subject to the discretion or the control of the court so long as it is confined to the number of peremptory challenges allowed by law. Hendrick v. Com., 5 Leigh, 707; Jackson v. Pittsford, 8 Blackf. 194; Hunter v. Parsons, 22 Mich. 96; Jhons v. People, 25 Mich. 500; Hamper's Appeal, 51 Mich. 71; State v. Pritchard, 15 Nev. 74; Jones v. Vanzandt, 2 McLean, 611; People v. Kohle, 4 Cal. 199; People v. Jenks, 24 Cal. 11; Edelen v. Gough, 8 Gill. 87; People v. Carpenter, 36 Hun (N. Y.), 315; Hooker v. State, 4 Ohio, 348, 350; Beauchamp v. State, 6 Blackf. 299–308; Munly v. State, 7 Blackf. 593; Morris v. State, 7 Blackf. 607; People v. Reynolds, 16 Cal. 128; People v. Ah You, 47 Cal. 121; Drake v. State, 51 Ala. 30; Kleinback v. State, 2 Speers, 351, 418; Schumacker v. State, 5 Wis. 324; Lindsley v. People, 6 Park Cr. R. 233; Drake v. State, 51 Ala. 30; People v. Bodene, 1 Denio, 281; 1 Chitty Cr. L. 545; People v. Carrier, 46 Mich. 442; State v. Armington, 25 Minn. 29.

Messrs. JAMES S. EWING and PITTS, BENT & LINDLEY, for defendant in error.

WALL, J. This was an action on the case under the 9th section of the Dram Shop Act.

The declaration alleged that defendants sold and gave intoxicating liquors to David Smith, husband of the plaintiff, which contributed to his intoxication, and in consequence thereof he came to his death, whereby the plaintiff was injured in her means of support.

A trial by jury resulted in a verdict of $2,500 for the plaintiff, and the court, after refusing a motion for new trial, rendered judgment thereon.

The record is brought here upon a writ of error. It is alleged that the evidence does not show with such clearness as to support the verdict, that deceased came to his death in consequence of his intoxication, nor that he obtained liquor from defendants, or either of them, and that, admitting liquor was obtained by him from defendant Miller, it does not appear

that it could have contributed so substantially to his intoxication as to render him liable in any event.

These questions of fact have received our attentive consideration, for they were urgently pressed in the oral argument as well as in the printed briefs. It seems to be reasonably apparent from all the evidence, that Smith was so far intoxicated on the last night of his life as to lose his road homeward, and that while in this condition he fell from a high embankment into a shallow stream of water, where he was found the next morning lying on his face, dead. It is probable death was produced by drowning, as no severe wounds or bruises were discovered. He left the shop where he was employed as a journeyman tailor, in the City of Bloomington, about 5 o'clock in the afternoon of October 5th, with the sum of $5. He paid $3 to one Parker and a small sum at a meat shop, and when found the morning of the 6th, he had 25 cents on his person.

According to the testimony of Dunn, he was seen about 6 o'clock in the afternoon, stepping off the sidewalk in front of Miller's saloon, in which place he drank whisky a few minutes afterward. He was somewhat intoxicated when Dunn first saw him, and although this witness tried to get him to go to his home, he did not succeed. He finally gave Dunn the meat he had purchased for his supper, and, persisting in his refusal to go home, Dunn left him.

He was found soon afterward at the saloon of Mayer, the other defendant, where he remained for some time, leaving there a little before 8 o'clock in company with Bowen, another tailor, considerably intoxicated. The evidence of the plaintiff tends to show that he drank whisky three or four times while at Mayer's saloon. About 11 o'clock he was seen going in the direction of the place where he lost his life, having come from the direction of Mayer's saloon somewhat under the influence of liquor. This was the last time he was seen alive.

All the circumstances tend to show that he was so intoxicated that he failed to go home at the usual hour for supper; that he continued to drink and that he did not finally start

homeward until the saloons were required to close for the night. The details of the testimony, which can not now be referred to, are consistent with this view, and the whole evidence considered, there was enough to warrant the jury in believing that his death was due directly to his intoxication. That he was in the saloons of the defendants is not denied, but it is seriously and stoutly controverted that he drank anything at either place. Upon this point the conflict was settled by the jury in favor of the plaintiff, and without referring to the particulars of it, we think there was enough in the proof to justify the conclusion. The liquor was obtained at Miller's, if at all, four or five hours before he was last seen alive, and it is strongly insisted this could not have contributed to the fatal result. The statute imposes liability where the intoxication is caused in whole or in part by the liquor furnished by the defendant. Conceding as a reasonable construction that the liquor so furnished must have contributed in some direct and substantial, though possibly slight degree, it seems apparent that if he did drink there, as testified by Dunn, being then somewhat intoxicated, and that he kept on in the same course, as shown by the other testimony, the contribution of the defendant, Miller, is sufficiently direct and substantial to bring him within the scope of the law.

It follows that we can not interfere with the judgment, upon the ground that the evidence fails to support it.

It is also urged that the court erred in refusing to permit the defendants to challenge peremptorily two of the jurors. In impaneling the jury, the plaintiff and defendants had each accepted two panels of four each. After the third panel of four had been passed on and accepted by the plaintiff, but before it had been accepted by the defendants, and before any of the jury had been sworn, the defendants asked leave to challenge peremptorily two of the jurors who were in the first and second panels, which had been accepted by both sides, the defendants having up to that time used but one peremptory challenge. The court refused this request and defendants excepted.

The propriety of this ruling depends upon the construction

to be given Sec. 21, Ch. 78, R. S., which reads as follows: "Upon the impaneling of any jury in any civil cause now pending or to be hereafter commenced in any court in this State, it shall be the duty of the court, upon the request of either party to the suit, or upon its own motion, to order the full number of twelve jurors into the jury box, before either party shall be required to examine any of the said jurors touching their qualifications to try any such causes; *provided*, that the jury shall be passed upon and accepted in panels of four by the parties, commencing with the plaintiffs."

In the case of Sterling Budge Co. v. Pearl, 80 Ill. 251, the Supreme Court had occasion to consider this section, and held it required that there should, at all times while the jury was being impaneled, be twelve jurymen in the box, and though the point was not before the court for decision, it was remarked by the court: "When the panel of four is accepted by both parties they become a part of the jury, and a panel of four more is called up, and the same process is repeated." This can not, of course, be regarded as a judicial construction upon the point now at issue, because it was not involved in the case then before the court, but we are of the opinion it is the sound construction, and that the trial court ruled properly in the case at bar. Many of the references of counsel are irrelevant, and none of them, so far as we are advised, is directly in point, because none of them arose upon a statute like ours. It is conceded, if the two panels had been sworn as they were accepted, it would have been too late to exercise the peremptory challenge. We suppose the practice is not uniform in this State as to the swearing of the jury by panels as accepted, or the whole twelve after the three panels have been filled by acceptance on both sides.

Considering the requirement that twelve jurymen shall at all times be in the box while the jury is being made up and considering the plain terms of the provision above quoted, "that the jury shall be passed upon *and accepted* in panels of four by the parties, commencing with the plaintiff," we have no doubt that the right of peremptory challenge must be availed of before the panel is accepted, and when the panel is

accepted it becomes a part of the jury. It would be inconsistent to say that a party might accept a panel and afterward reject a part of it; and this is not, in our opinion, the meaning of the provision. Of course, it would be within the sound discretion of the court to allow a party to withdraw his acceptance of a panel and make his challenge, and the court would permit this whenever any good and sufficient reason should be disclosed, the party having used proper diligence and care to inform himself of all facts necessary to protect his interests, but something in this nature should affirmatively appear to require the court to exercise its discretion.

In the present instance no such cause was assigned or even suggested, it being assumed the right of challenge remained until the jury was sworn.

It is next urged the court erred in admitting improper testimony offered in behalf of the plaintiff. The first item of evidence objected to, is that in which the plaintiff is permitted to state that she had no means of support other than her husband and that she was wholly dependent upon him. In this there was no error. The law distinctly bases the right to recover upon an injury to the person, property or means of support of the plaintiff occasioned by the intoxication of the party to whom the liquor is furnished. This being one of the grounds upon which the recovery may be predicated, it is certainly proper and competent to show the extent of the support furnished by the person in question. Where he was the entire means of support the loss would be greater than where he was but partially so. Cases might arise where the husband, by reason of ill health or other causes, is of no support whatever to the wife, and it would surely be competent to show this fact.

We understand this to be the clear inference to be drawn from the adjudications of the Supreme Court in various cases, among which may be cited Keedy v. Howe, 72 Ill. 133; Meidel v. Anthis, 71 Ill. 241; Confrey v. Stark, 73 Ill. 187; Flynn v. Fogarty, 106 Ill. 263.

The other item of testimony complained of is an answer of the witness Dunn in describing the action of Smith when they

Mayers v. Smith.

got to the saloon, kept by one Haker.   He was asked, what
took place there, and answered: He (Smith) wanted to take
another drink.

We are unable to see anything objectionable in this.   If the
witness was by this expression seeking to strengthen his posi-
tion that Smith had already taken one drink, the fact could
probably be shown by the proper cross-examination.

If the statement was in truth a quotation of what was said
by Smith, it was competent because part of the *res gestœ*.
Wharton on Evidence, Vol. 1, Sec. 258-9.

It is urged next, that the court erred in giving the follow-
ing instruction for the plaintiff:   "5.  By a preponderance of
the evidence is not necessarily meant a greater number of
witnesses, but if the plaintiff has proven the material allega-
tions of her declaration by such evidence as satisfies and pro-
duces conviction in the minds of the jury, then she has proven
her case by a preponderance of the evidence."  "Given."

It is said, by way of criticism, that this instruction would
warrant the jury in disregarding the evidence offered by the
defendants, and that by the terms employed in it, if the evi-
dence of the plaintiff considered alone, regardless of all else in
proof, satisfies and produces conviction in the mind of the jury,
then she has a preponderance of the evidence.   We can not
suppose that any practical man of ordinary intelligence would so
understand it.   It can hardly be possible that such a man would
be induced by it to overlook all the evidence of the defense,
discard it wholly, and rely alone on that of the prosecution.
Such is not the ordinary and natural meaning to be attached
to it, and when it is read in connection with all the other in-
structions given on either side in reference to the weight and
preponderance of evidence referring pointedly to the con-
flicting nature of the testimony and the duty of the jury to
weigh it all in the light of the various considerations properly
applicable, there is no reason to apprehend that it was mis-
understood in the way suggested.

It is urged also that the damages are excessive.   While it
may be said they are fully as high as the evidence would war-
rant, they are not so great as to justify interference by an

appellate court upon that ground alone. There was no evidence whatever tending to make a case for the allowance of exemplary damages, and it is not to be presumed any part of the verdict is for such damages.

Nowhere in the evidence or instructions of plaintiff does it appear that anything more than actual damages were sought, and it will be assumed the jury took nothing else into account. This consideration disposes of the only remaining objection, urged in the brief of appellants, that the court excluded evidence offered by defendants to show they had instructed three barkeepers not to sell to said Smith.

Such instructions would be no bar in any event to actual damages, if liquor was furnished, and as there was no evidence or claim by plaintiff for exemplary damages, the offer was irrelevant and properly refused. The judgment will be affirmed.

*Judgment affirmed.*