RUDOLPH MAHLEN v. THE LAKE SHORE & MICHIGAN SOUTH-
ERN RAILWAY COMPANY.

*Railway injury—Man on track—Contributory negligence.*

A workman while on his way home in the evening stood talking with a
companion by a railway track where three roads ran side by side,
and where, by daylight, the track could be seen for two miles.   He
had drunk two glasses of beer.   He was forty years old and familiar
with the locality, and he also knew that a train was due.   A well-
illuminated passenger train which had broken its headlight, and had
substituted an ordinary lantern therefor, approached, and was seen
by several persons in the neighborhood.   The workman, however,
did not see it, but heard a rumbling which he supposed came from
some vanishing train on one of the other tracks.   He stepped on the
track nearest him, with his companion, and both were struck, the
latter being killed ; *held*, that he did not exercise due care.

Error to Wayne.   Submitted Oct. 31.   Decided Jan. 10.

CASE.   Defendant brings error.   Reversed.

*William H. Wells* and *Ashley Pond* for appellant,
cited in support of the claim that the deceased had been
contributively negligent: *Penn. R. R. v. Ogier* 35 Pa.
St. 67; *Bellefontaine Ry. Co. v. Hunter* 33 Ind. 336.
*Penn. R. R. v. Righter* 42 N. J. L. 187; *Butterfield v.
Western R. R.* 10 Allen 532; *Reynolds v. Railroad Co.* 58
N. Y. 248; *Cordell v. N. Y. C. & H. R. R.* 75 N. Y. 331;
*Salter v. Utica &c. R. R.* id. 273; *Railroad Co. v. Hous-
ton* 95 U. S. 702; *Artz v. C. R. I. & P. R. R.* 34 Ia. 154;
*Payne v. C. R. I. & P. R. R.* 39 Ia. 523; *C. C. C. & I.
R. R. v. Elliott* 28 Ohio St. 340.

*E. H. Sellers* and *W. L. Carpenter* for appellee, claimed
that the case was rightly submitted to the jury: *Stackus v.
N. Y. C. &c. R. R.* 79 N. Y. 466; *Davis v. N. Y. C. &c.
R. R.* 47 N. Y. 400 ; *Weber v. N. Y. C. &c. R. R.* 58 N.
Y. 453 ; *Dolan v. Del. & H. Canal Co.* 71 N. Y. 288;
*Massoth v. Del. & H. Canal Co.* 64 N. Y. 530; *Com. v.*

*Fitchburg R. R.* 10 Allen 189; *Bonnell v. D. L. & W. R. R.* 39 N. J. L. 192; *Eilert v. G. B. & Minn.* 48 Wis. 606. running a dark train into a city or through a village in the night, especially without signalling its arrival, is the grossest kind of negligence; *Nash. & Chat. R. R. v. Smith* 6 Heisk. 174; *Ind. & St. L. R. R. v. Galbreath* 63 Ill. 436; *Pakalinsky v. N. Y. C. &c. R. R.* 82 N. Y. 424; *Burling v. Ill. Cent. R. R.* 85 Ill. 18.

GRAVES, C. J. The plaintiff recovered damages for being struck and injured by one of defendant's trains while he was going on foot across the track on a public street, and the defendant seeks a reversal on allegations of error.

The trial was before a jury. The defendant's negligence was averred to consist in the three particulars of running the train without a head-light; in going at excessive speed; and in failing to give warning by bell or whistle. The first two were ruled out, and the defendant's culpability was therefore rested at last on the allegation of failure to sound the bell or whistle. The argument on the part of the defendant has limited the objections to two grounds, both of which rest on refusals to charge as requested: *first*, that the uncontradicted evidence establishes that warning by bell and whistle was duly given; *second*, that according to the admitted and unquestionable facts, the plaintiff's being struck was owing chiefly, if not wholly, to his own neglect of due care.

The first position will not be considered, and attention will be confined to the last. No map or diagram accompanies the record, and knowledge of localities must be gathered from scattered remarks of witnesses. The casualty occurred at a point in Vinewood avenue a little east of the west boundary and shortly before seven o'clock in the evening of March 16, 1881. About one-third of a mile west of Vinewood is Michigan avenue, and between them and about three hundred feet distant from Vinewood is Twenty-eighth street. Three railroads running a few feet apart cross these streets. They are the Bay City, the Grand Trunk and the

road of defendants. The Bay City is the most southerly, and the road of defendants, which is next, is about fifty feet from it. The Grand Trunk is within a few feet on the north.

The plaintiff is thirty-nine years of age. He was living on Vinewood avenue near the crossing and north of it and had been for eight months; but was at work in the Michigan car shops near Michigan avenue. At a quarter before five he stopped work, and called at Brinkman's and drank a glass of beer. He fell in with a companion by the name of Fraser, and the two went to a shoe store near by and stayed about half an hour. They then returned to Brinkman's, where each took another glass of beer, and then started together for their several homes. They went by the way of Boulevard street to defendant's track at a point about a dozen rods west of Vinewood avenue, and followed it till they reached the cattle-guard. They crossed the cattle-guard, and then stopped to talk where the sidewalk of the avenue is intercepted by the track, and within two feet of the south rail; the plaintiff intending to cross the track there to go to his house. At this time the train was just about due. They remained in talk there for some two minutes.

Leaving them standing there in conversation close by the rail at train time, it is best to refer to other circumstances. While the train was at Monroe it was found out that the glass of the head-light had been broken, and at Trenton a common hand lantern, having a white light, was put in, and the train was run with that light through to the depot. The passenger coaches were well lighted. The speed was thirty miles an hour. Although the evening was quite dark, and the ordinary head-light was wanting, it was still entirely practicable to see the train some distance off. John Burk, while walking on the sidewalk on Vinewood avenue and two hundred feet from the crossing, saw the train before it reached there. Mary Wilson, a resident on the avenue and about one hundred and twenty-five yards from the crossing, noticed the train from her house, and observed that the light

was not the usual one, but smaller, and she observed further that there were lights in the cars. William Stecher saw the train when it was two or three blocks from him. James McCracken was walking on the track towards Vinewood avenue. Fraser and the plaintiff had preceded him, and were some distance ahead. He was in the middle of the track, and knew it was about train time, and hearing the whistle, looked around and saw the train coming. It was about its own length behind him as he thinks and he got off. This was near the Vinewood crossing. Charles M. Ward was going on the track towards the avenue and when about half way between that and Twenty-eighth street he discovered the train when it was four or five rods behind him and in time to get off.

Returning to Fraser and the plaintiff, who were left in conversation by the rail, the plaintiff states that he looked and listened but heard no bell or whistle while he stood there, nor saw any train on defendant's track; that all was quiet; that it was so dark that he could not see the track; but that they knew there was something coming somewhere, yet as there was no light to be seen they thought it was something going down the other way; that Fraser saying "We must go" the plaintiff stepped on the track and was immediately struck. Fraser was killed.

It so happened that while these persons were there standing by the rail and seem not to have been conscious of the approach of the train, two others were also standing by the Bay City track on the same side of the avenue and not far from fifty feet distant from the plaintiff, and also engaged in conversation. These persons were young Farmer and Miss Burk. They saw Frazer and plaintiff standing together at the defendant's track as stated by the plaintiff, and Farmer heard the noise made by the train on its way and saw it and recognized it when it was near the Boulevard and at the same time noticed that Fraser and the plaintiff had not left, but were yet where they had been. He turned to speak to Miss Burk and as the train reached the crossing he looked that way and saw a man fly into the air and both men

immediately disappeared from view. From the place where the plaintiff talked with Fraser it was entirely practicable to see up the railroad for more than two miles, the track being straight.

With these facts present and nothing to militate against them or to palliate their effect the question presses whether there is room for any reasonable mind to claim that when the plaintiff stepped on the track just ahead of the locomotive he was exercising due care. He was of full age and there is no pretense that he was not competent by proper effort to take care of himself. He had lived and was living near by and was familiar with the locality and with the activities belonging to it and with their character. He knew with what suddenness and force it was common for trains to rush by and he was bound to regard the track itself as an admonition to keep off of it until satisfied by scrutiny that it might be safely crossed. He was on foot and unexcited. He was not hampered by the care of a team or by anything else to embarrass him. Nor was he in a place which was strange to him, nor in the presence of entangling influences or conditions to perplex or confuse him.

His position enabled him to act sedately and with circumspection and to be master of his own movements. He was capable of seeing and hearing consciously what others in no better position for so doing were fully and positively conscious of seeing and hearing. And it is not pretended that he did not know as well as others living in the vicinity that the train was just about due. Still, when in fact it was already within something like a hundred and fifty feet and substantially on its proper time and when he had just heard it rumble but assumed it was a train on one of the other roads and going the other way because he failed to see any light, he stepped over the rail and was instantly hit.

That "rumbling" was of itself notice to put his senses on inquiry. It was quite enough in the obscurity of evening and in view of the facts about him to prompt him to active vigilance and to summon his faculties to a sharp and very thorough survey of the actual conditions before placing

himself by a single step in the exact spot where injury, should it happen at all, was to be expected.

I have no doubt the want of a head-light might, under some circumstances, afford an answer to an argument alleg_ ing a neglect of due care by the plaintiff, but here the circumstance is destitute of value.   As well might it be said almost, that a plaintiff injured while purposely asleep on the· rail might urge the want of a head-light to excuse his own inattention and exposure.   Of course it is not to be inferred that the plaintiff designed to incur the risk of being hurt. But the facts are stubborn and conclusive, and his behavior· can only be accounted for by supposing that he allowed his. mind to become so fully preoccupied and so completely withdrawn from attention to the things about him that he· was temporarily not conscious of the perils of the place and. of the nearness of the train.   But the only comment which. can be made by law or reason is that such inattention on such an occasion was itself most obviously a want of due care amounting to real negligence, and for the consequences of which the defendants ought not to be held responsible. This result is a necessary one in view of *Lake Shore & M. S. R. Co. v. Miller* 25 Mich. 274, and of several other cases here which stand in line with it and with the general course of decision elsewhere, and we must either accept it or virtu- ally overrule these repeated and well-considered determi- nations.

The conclusion is that the judgment should be reversed with costs and a new trial granted.

COOLEY, J. concurred.

MARSTON, J.   I concur in the result arrived at by the Chief Justice in this case, for the reason that the plaintiff, according to his own testimony, standing close to the track as he did, failed to use his senses, by either looking or listen- ing, with sufficient care to avoid the danger.   *Lake Shore & M. S. R. Co. v. Miller* 25 Mich. 274.

CAMPBELL, J. dissenting.   It is not claimed by plaintiffs

in error that there was any error sufficient to reverse the judgment unless the court below should have taken the case from the jury on account of contributory negligence.

This negligence is claimed to have consisted in going upon the track when the train was approaching without taking any pains to see that it was coming.

The plaintiff testified that he did not see it and did not hear it, and that he looked down the track. The locomotive had no head-light except an ordinary lantern, and was running at a rate of thirty miles an hour. There were two other tracks of different roads within a short distance and parallel to the track of defendant. I am not prepared to say that a person standing near a track is negligent in not expecting a train when he can neither see the head-light nor the rear lights which are universally used, and which are the only means generally available of discovering an advancing or backing train in the darkness. While under all the circumstances a jury might have been justified in finding there was negligence in fact, yet it seems to me the question was one on which they had a right to pass. We cannot hold there was negligence as matter of law if there was any testimony on the subject which was open to consideration. I think there was such testimony, and that the case was properly submitted.